[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14352

_____

JERRELL WHITTEN,
derivatively o.b.o. FleetCor Technologies, Inc.,

                                                                Plaintiff-Appellant,

*versus*

RONALD F. CLARKE,

MICHAEL BUCKMAN,

JOSEPH W. FARRELLY,

THOMAS M. HAGERTY,

MARK A. JOHNSON, et al.,

                                                                Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-02585-LMM

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Delaware corporate law requires a shareholder who intends to initiate a derivative action on behalf of a corporation to either make a demand on the board of directors to rectify the alleged wrongs, or show why demand is excused.  Under Delaware law, demand is excused, among other reasons, if a majority of the board of directors faces a substantial likelihood of liability.  In July 2017, Whitten, a shareholder and citizen of Illinois, brought this shareholder derivative action alleging breach of fiduciary duties by FleetCor's directors and executives without first making a demand on the board.  Whitten argues that demand was excused because a majority of the board faced a substantial likelihood of liability for their breach of fiduciary duties.  The district court held that Whitten had failed to adequately plead that demand was excused and dismissed Whitten's claims.  After careful review and with the benefit of oral argument, we affirm.

## I. BACKGROUND

Whitten filed his complaint in this shareholder derivative action on July 10, 2017. Following other legal developments, detailed below, Whitten filed an amended complaint. The complaint names as defendants FleetCor's CEO, Ronald F. Clarke, FleetCor's CFO, Eric R. Dey, and all but one member of FleetCor's Board of Directors.[1] Clarke is the only member of the Board who is not an Outside Director. Dey is not a member of the Board. Whitten alleges breaches of fiduciary duties and unjust enrichment by the Defendants. The complaint names FleetCor, incorporated in Delaware and headquartered in Georgia, a nominal defendant.

FleetCor provides workforce payment products and derives its revenue primarily from the sale and maintenance of its fuel card programs for businesses. Fuel cards are generally distributed by businesses to their employees, allowing those employees to purchase fuel at gas stations. FleetCor also coordinated with partners, like Chevron/Texaco, to implement branded fuel card programs. In 2007, FleetCor contracted with Chevron to manage Chevron's card program for ten years. That relationship ended on December 31, 2016.

---

[1] The named defendants that sat on FleetCor's Board of Directors at the time the first complaint was filed include: Ronald F. Clarke ("Clarke"), Michael Buckman ("Buckman"), Joseph W. Farrelly ("Farrelly"), Thomas M. Hagerty ("Hagerty"), Mark A. Johnson ("Johnson"), Richard Macchia ("Macchia"), Jeffrey S. Sloan ("Sloan"), and Steven T. Stull ("Stull"). Hala Moddelmog, the other Director at the time the underlying action was commenced, is not a party to this suit.

Whitten alleges that FleetCor engaged in a scheme to artificially inflate its stock price between February 2016 and May 2017. Whitten alleges that during this period, FleetCor advertised on its website that FleetCor clients "[p]ay no fees—no set-up fees, transaction fees, card fees or annual fees." Furthermore, Whitten alleges that FleetCor's sales staff were told to market FleetCor's fuel cards as having no fees. In contrast to its marketing, Whitten alleges that FleetCor charged a multitude of fees, including late fees, high risk fees, Minimum Program Administration fees, Program Fees, Account Fees, and Convenience Network and Out of Network Fees. FleetCor allegedly tested its ability to impose such fees in certain customers' invoices. FleetCor allegedly waited to do so until a few months had passed when most customers would stop monitoring their invoices. Whitten argued that these allegedly deceptive business practices artificially inflated FleetCor's stock.

Whitten also alleges that FleetCor included false or misleading statements in the company's 2015 and 2016 10-K filings. Whitten notes that the Defendant directors all signed those filings. Whitten further alleges that the Board's Audit Committee was required to discuss earnings releases and earnings guidance with management and knowingly or recklessly reviewed and approved of the false or misleading statements allegedly contained therein. Whitten specifically notes that one Board member, Macchia, reviewed and revised an earnings call script.

Whitten further alleges that, during this period, five members of the Board sold stock: Clarke, Farrelly, Hagerty, Johnson,

and Macchia (collectively, "Selling Defendants").  Whitten argues that those directors traded on adverse, nonpublic information and, therefore, face a substantial likelihood of liability for those insider stock sales.

Whitten's complaint highlights numerous public reports and investigations into FleetCor.  The first was published on March 1, 2017, when Capitol Forum, a consumer-focused financial journalism publication, published a report raising questions about the legitimacy of FleetCor's fee-based income.  On March 20, 2017, Capitol Forum published a follow-up report providing more details on the alleged scheme.  On April 4, 2017, Citron Research, an online stock commentary site, published a similar report detailing FleetCor's alleged fee scheme.  On April 27, 2017, Capitol Forum published a report on FleetCor's bill payment system.  And on that same day, Citron published a follow-up report on FleetCor's fees.

Shortly thereafter, on May 1, 2017, Chevron filed suit against FleetCor alleging that "FleetCor seeks to maximize its profits by harvesting the accounts for fees while failing to service the accounts at the contractually required levels."  Chevron's complaint specifically alleged that FleetCor "allow[ed] the number of sales personnel to fall below contractual requirements; increas[ed] customer card shipping-and-handling fees without approval; and attempt[ed] to cut call-center hours without approval."  On June 14, 2017, a federal securities law class action was filed against FleetCor.

Two and a half years later, on December 20, 2019, the Federal Trade Commission ("FTC") brought suit against FleetCor,

alleging violations of the Federal Trade Commission Act, 15 U.S.C. § 53(b). The FTC complaint alleged FleetCor engaged in deceptive billing and sales practices to collect unwarranted fees. That same day, FleetCor issued a press release stating that the FTC's claims lacked merit and that FleetCor disagreed with them.

In its briefing to the district court, Whitten argued that demand on the Board was futile for two reasons. First, Whitten argued that FleetCor's press release in response to the FTC complaint shows that the Board prejudged the claims here. Second, Whitten argued that a majority of the Board faced a substantial likelihood of liability on the claims. The district court found that neither of these arguments showed that demand was futile.

On the prejudgment claim, the district court held that director impartiality is determined at the time the plaintiff's complaint is filed. Therefore, FleetCor's press release in December 2019, almost two and a half years after the filing of Whitten's complaint, could not show that the Board prejudged the merits and that demand would have been futile in July 2017. The district court also found that Whitten failed to allege that the press release was attributable to the Board. Whitten does not appeal this holding.

On the substantial likelihood of liability claim, which Whitten does appeal, the district court held that his argument also failed. Although the district court suggested that the Board should have known about FleetCor's alleged fee scheme, the district court held that Whitten failed to adequately plead that at least a majority of the Board actually knew about the fee scheme. Because Whitten's

claims for liability based on insider trading and disseminating false or misleading statements required Board knowledge of the allegedly fraudulent scheme, the district court held that those claims failed. The district court further held that Whitten failed to allege particularized facts showing that the Selling Defendants knew adverse, nonpublic information and traded on that information. The district court additionally held that Whitten failed to allege that any Board member besides Clarke and Macchia played any role in the allegedly misleading earnings guidance. And the district court noted that signing a 10-K report is insufficient by itself to sustain a misstatement claim.

Accordingly, the district court granted Defendants' motion to dismiss because Whitten failed to show demand was excused. This appeal followed.

## II. JURISDICTION

The district court had jurisdiction over this case through diversity jurisdiction. 28 U.S.C. § 1332. Typically, in a shareholder's derivative action, "the corporation is properly realigned as a plaintiff since it is the real party in interest." *Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522–23, 67 S. Ct. 828, 831 (1947)). If FleetCor were realigned as a plaintiff, complete diversity would be destroyed because both FleetCor and members of the Board are domiciled in Georgia. That would remove this case from our jurisdiction.

But where "the management is antagonistic to the stock-holder," the corporation is properly a defendant. *Smith v. Sperling*, 354 U.S. 91, 96, 77 S. Ct. 1112, 1115 (1957).  And "if the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism is clearly evident and the corporation remains a defendant." *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983).  Whitten's complaint makes such allegations.  Therefore, based on Whitten's allegations, there is the requisite antagonism between Whitten and management.  *See id.*  FleetCor, then, remains a nominal defendant.  Because Whitten is a citizen of Illinois and no defendant is domiciled in that state, there is complete diversity between the parties here, and we have jurisdiction.

## III. STANDARD OF REVIEW

We have long reviewed a "district court's dismissal under Federal Rule of Civil Procedure 23.1 for abuse of discretion." *Freedman v. magicJack Vocaltec, Ltd.*, 963 F.3d 1125, 1130–31 (11th Cir. 2020) (citing *Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994)); *see also Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 960 (11th Cir. 1982).  The district court abuses its discretion when it "applies an incorrect legal standard, or applies improper procedures, or relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly unreasonable or incorrect." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005) (per curiam).  "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly

erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2, 134 S. Ct. 1744, 1748 n.2 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990)).

Whitten argues that our review here should be *de novo* for two reasons. First, Whitten argues that since Delaware law governs the standard for demand excusal and Delaware reviews dismissals for a demand failure *de novo*, we should do so as well. Second, Whitten notes that federal courts are trending toward *de novo* review of dismissals under Rule 23.1. Neither argument requires any change in our standard of review.

First, while the substantive requirements for whether demand is excused are defined by Delaware law in this appeal, *Garber v. Lego*, 11 F.3d 1197, 1201 (3d Cir. 1993) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09, 111 S. Ct. 1711, 1723 (1991)), the "proper standard of review is a question of federal procedure and is governed by federal law," *West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 350 (9th Cir. 1989) (citing *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978)); *see also In re Abbott Lab'ys Derivative S'holders Litig.*, 325 F.3d 795, 803 (7th Cir. 2003) ("State law does not govern the relation between the trial court and the appellate court in a diversity litigation." (citing *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 335 (7th Cir. 1994))). Thus, while Delaware courts review dismissals for failure to make a pre-suit demand *de novo* under Delaware's Rule 23.1, *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000), that does not control our standard of review.

10                    Opinion of the Court                    20-14352

And contrary to Whitten's argument, because our consistent application of abuse of discretion review to dismissals under Federal Rule of Civil Procedure 23.1 is not an interpretation of Delaware law, the Delaware Supreme Court's intervening decision in *Brehm* does not render our prior holdings "clearly wrong." *See Lee v. Frozen Food Express, Inc.*, 592 F.2d 271, 272 (5th Cir. 1979) (holding that we follow prior panel decisions "absent a subsequent state court decision or statutory amendment which makes this Court's decision clearly wrong").[2]

Second, because the standard of review for dismissals under Federal Rule of Civil Procedure 23.1 is a matter of federal law and not influenced by developments in Delaware law, we are bound by prior panel decisions of our Court. *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997). "'The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision." *Id.* (citing *United States v. Woodard*, 938 F.2d 1255, 1258 (11th Cir. 1991)). Thus, even if federal courts are trending toward *de novo* review, our prior cases are clear that we review dismissals under Rule 23.1 for abuse of discretion.

Nevertheless, we clarify what our abuse of discretion review entails here. Rule 23.1 contains numerous requirements that a plaintiff must meet to maintain a derivative action. *See* FED. R. CIV.

---

[2] Decisions of the former Fifth Circuit are binding on our Circuit. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

P. 23.1. Whitten's argument on appeal is that the district court erred by concluding that he failed to adequately plead particularized facts showing that demand was excused. A district court "abuse[s] its discretion if it based its ruling on an erroneous view of the law." *Highmark*, 572 U.S. at 563 n.2, 134 S. Ct. at 1748 n.2 (internal quotation marks omitted). And whether a complaint meets the requisite pleading standard is a question of law. *Cf. id.* at 563, 134 S. Ct. at 1748 (noting that "[t]raditionally, decisions on 'questions of law' are 'reviewable *de novo*'"); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (holding that "[w]e review *de novo* the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim"). Therefore, although a district court must construe the allegations in the complaint "in the light most favorable to the plaintiff," *Hill*, 321 F.3d at 1335, and "draw all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010), whether the complaint fails "to state a claim upon which relief can be granted" is a question of law, FED. R. CIV. P. 12(b)(6). The same is true even if the complaint is subject to a heightened pleading standard. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (reviewing *de novo* a complaint subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud). The proper procedural vehicle for demand excusal in our Circuit is Rule 23.1. *Peller v. S. Co.*, 911 F.2d 1532, 1536 (11th Cir. 1990). But the inquiry is similar to that with respect to Rule 12(b)(6) and Rule 9(b), so whether the complaint adequately pleads demand excusal under Rule 23.1 is a question of law. While we review the district court's

decision for abuse of discretion, a legal error made by the district court, as Whitten argues occurred here, is reviewed *de novo* and, if error, would warrant reversal.

## IV. DISCUSSION

Federal Rule of Civil Procedure 23.1 governs pleading requirements for derivative actions in federal court. FED. R. CIV. P. 23.1. In pertinent part, Rule 23.1 provides:

> (b) Pleading Requirements. The complaint must be verified and must:
>
>     . . .
>
>     (3) state with particularity:
>
>         (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and if necessary, from the shareholders or members; and
>
>         (B) the reasons for not obtaining the action or not making the effort.

FED. R. CIV. P. 23.1(b). Importantly, "Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." *Kamen*, 500 U.S. at 96, 111 S. Ct. at 1716. To "determine whether the demand requirement may be excused," *id.*, we "must look to the substantive requirements of the exception as it is defined by the state of incorporation," *Garber*, 11 F.3d at 1201 (citing *Kamen*, 500 U.S. at 108–09, 111 S. Ct. at 1723).

Because FleetCor is incorporated in Delaware, Delaware substantive law determines the requirements for demand excusal here. *See Garber*, 11 F.3d at 1201. But since this action is in federal court, Whitten must "state with particularity" his "reasons for . . . not making the effort" to make a demand on the Board. FED. R. CIV. P. 23.1(b), (b)(3). In other words, Whitten's pleadings must state with particularity why, under Delaware law, demand is excused. And unlike other heightened pleading standards, Rule 23.1 provides no exceptions to the requirement to "state with particularity." Specifically, Federal Rule of Civil Procedure 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). But Rule 9 allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 23.1, however, provides no such exceptions.[3] Therefore, Whitten must state with particularity all factual allegations, including knowledge, which are necessary to show demand excusal under Delaware law.

Delaware law typically requires that a plaintiff make a demand on a board before filing suit. *Aronson v. Lewis*, 473 A.2d 805,

---

[3] Although Whitten alleges fraud by FleetCor, Whitten does not argue that Rule 9(b) applies to his pleading for demand excusal. We, thus, consider that argument waived and express no opinion on any application of Rule 9(b) to demand excusal. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1303 (11th Cir. 2007) (explaining that arguments not raised on appeal are waived).

14               Opinion of the Court               20-14352

809 (Del. 1984), *overruled with respect to another issue by Brehm*,
746 A.2d at 254 (overruling *Aronson*'s discussion of the appropriate
standard of review). This requirement "is a rule of substantive
right designed to give a corporation the opportunity to rectify an
alleged wrong without litigation, and to control any litigation
which does arise." *Id.* Delaware law, however, excuses that re-
quirement if "that demand would be futile." *Braddock v. Zimmer-
man*, 906 A.2d 776, 784 (Del. 2006).

   Delaware law has traditionally provided two tests for when
demand would be futile, the test articulated in *Aronson* and the test
articulated in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). *Brad-
dock*, 906 A.2d at 784. Under *Aronson*'s two-part test, demand is
excused if the complaint pleads "particularized facts creating a rea-
sonable doubt that '(1) the directors are disinterested and independ-
ent or (2) the challenged transaction was otherwise the product of
a valid exercise of business judgment.'" *Id.* (quoting *Rales*, 634
A.2d at 933). But *Aronson* does not apply if "the subject of the de-
rivative suit is not a business decision of the board." *Rales*, 634 A.2d
at 934. In that case, *Rales* applies, and "a court must determine
whether or not the particularized factual allegations of a derivative
stockholder complaint create a reasonable doubt that, as of the
time the complaint is filed, the board of directors could have
properly exercised its independent and disinterested business judg-
ment in responding to a demand." *Id.*

   One month after the district court held oral argument in this
case, but before the district court ruled, the Delaware Supreme

Court clarified the requirements for demand excusal and adopted a universal three-part test. *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1058 (Del. 2021). That three-part test, evaluated "on a director-by-director basis," for determining whether demand is excused is as follows:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that is the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Id.* at 1059. The Delaware Supreme Court described this refined test as "[b]lending the *Aronson* test with the *Rales* test." *Id.* Moreover, the Court noted that "cases properly construing *Aronson*, *Rales*, and their progeny remain good law." *Id.*

In the portion of the district court's opinion relevant to this appeal, the district court evaluated demand futility based on whether "the claims exposed a majority of the Board to a substantial likelihood of personal liability." This test appears both in the

refined three-part test described in *Zuckerberg* and in the progeny of *Aronson* and *Rales*. *See Conrad v. Blank*, 940 A.2d 28, 37 (Del. Ch. 2007). We apply the same test.

Whitten argues that a majority of the Board faced a substantial likelihood of liability for three reasons. First, Whitten argues that the Board knowingly and/or recklessly allowed the Company to violate the law. Second, Whitten argues that members of the Board engaged in insider trading. Third, Whitten argues that the Board approved false and misleading statements. All three arguments require that the Board or a majority of the Board knew about the allegedly fraudulent scheme. Thus, we first address whether Whitten has alleged with particularity that the Board knew of the allegedly fraudulent scheme. Then, we address Whitten's three arguments in turn. We conclude that Whitten failed to adequately plead demand futility.

### A. Whether Whitten alleged with sufficient particularity that the Board knew of the allegedly fraudulent scheme.

All three of Whitten's arguments for why members of the Board face a substantial likelihood of liability depend on those members of the Board having knowledge of the alleged fraudulent scheme. And because Rule 23.1 applies, Whitten must "state with particularity" facts showing that a majority of the Board had knowledge or facts that allow the court to draw the reasonable inference that it did. Fed. R. Civ. P. 23.1.

Whitten does not attempt to plead that each director knew on an individual basis.  However, allegations against the directors as a group do not appear to be impermissible under Delaware law. *See In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 797 (Del. Ch. 2009) (noting that "these group accusations are used sparingly" but concluding that "the Complaint pleads details about the fraudulent schemes that, when taken with the pled facts regarding Matthews' and Tizzio's roles at AIG, support the inference that they knew of and approved much of the wrongdoing").  After careful consideration, we conclude that Whitten's allegations fail to show that the Board as a group or individually knew of the alleged fraudulent scheme here.

In briefing to the district court, Whitten argued that the following seven facts, along with the allegation that fraudulent fees accounted for 76 percent of FleetCor's revenues, showed Board knowledge:

> (i) FleetCor's illicit fees and revenues derived therefrom were closely tracked, both at the Board and employee levels; (ii) employees were directed to test fees on vulnerable customers; (iii) customers routinely complained, both to FleetCor and the Better Business Bureau, regarding the illicit fees, and even sued FleetCor for the same; (iv) Capitol Forum and Citron published several publicly available investigative reports detailing the fee scheme; (v) the Company's former largest customer, Chevron, sued FleetCor on May 1, 2017 for "harvesting [customer] accounts for

fees"; (vi) shareholders filed the Securities Class Action for the same misconduct; and (vii) federal regulators were actively investigating FleetCor.

But these facts, when considered together, fail to show Board knowledge.

For all the above facts, Whitten failed to plead that the Board was actually aware of any of them at the relevant time for Whitten's demand on the Board.  The relevant time of course is the period of time before Whitten filed suit on July 10, 2017.  That is when Whitten would have had to make his demand on the Board to act. And to prove that a majority of the Board had a substantial likelihood of liability at that time (such that the Board could not consider his demand impartially), Whitten would have to show a majority of the Board had knowledge of the allegedly fraudulent scheme and had either acted in a manner to create personal liability (e.g., insider trading) or delayed acting long enough to be liable for knowingly or recklessly allowing fraud to continue.

Despite claiming in his briefs that the Board tracked revenues derived from fees, the complaint actually only alleges that FleetCor tracked related information and provides no evidence that information indicating a fraudulent fee scheme reached the Board at the relevant time.  *Cf. Rosenbloom v. Pyott*, 765 F.3d 1137, 1152 (9th Cir. 2014) (concluding Board knew or should have known about off-label marketing where complaint provided that "Board continued to closely and regularly monitor off-label Botox sales").  The same is true for FleetCor's alleged testing of fees; there

are no particularized allegations that the Board knew of the practice. Similarly, there are no allegations that customer complaints reached the Board. As the district court noted, the one customer lawsuit cited by Whitten was for a $1,000 fee—a lawsuit that would be unlikely to come to the Board's attention. *Cf. McCall v. Scott*, 239 F.3d 808, 822 (6th Cir. 2001) (concluding that statement in 10-K confirming existence of *qui tam* action was sufficient to show "Board was aware of the lawsuit"). Whitten argues that the Capitol Forum and Citron reports show the Board should have known about issues contained in those reports before publication—on the theory that if outsiders knew, the Board should have. But Whitten's complaint fails to provide allegations, and certainly provides no particularized allegations, showing that the Board had knowledge of those issues until the publication of the reports, beginning March 1, 2017, shortly before Whitten filed suit. March 1, 2017 is after the occurrence of the alleged misconduct that Whitten identifies as providing the basis for a substantial likelihood of liability. The latest alleged misstatement in Whitten's complaint was made February 8, 2017, and as described below, the relevant alleged insider sales occurred before March 1, 2017. Thus, Whitten's allegations fail to identify any actions taken by a majority of the Board members such as to subject them to a substantial likelihood of liability. Similarly, the federal securities class action was filed less than a month before Whitten filed suit on July 10, 2017. The FTC's lawsuit, moreover, was brought well after Whitten filed his complaint. And of course, Whitten was obligated to have made his demand before he filed suit.

The allegations regarding the Chevron lawsuit also fail to show Board knowledge. Nothing in Whitten's complaint shows that the Board was aware of the allegations in Chevron's complaint prior to May 1, 2017. Nor did Whitten plead particularized facts that the Board knew about Chevron ending its relationship with FleetCor prior to the termination that occurred on December 31, 2016. And even if the Board was informed about the specifics of the Chevron lawsuit prior to its filing or earlier, Chevron's complaint would not alert the Board to FleetCor's alleged fraud. The Chevron lawsuit complains that FleetCor sought "to maximize its profits by harvesting accounts for fees" while providing "poor service" and "failing to service the accounts at the contractually required levels." Chevron's complaint, then, does not indicate fraud but rather indicates breach of contract and highlights that Chevron was looking to avoid fees. Whitten's allegations surrounding FleetCor's Board meetings similarly fall short. Those allegations fail to show the Board was on notice of any alleged fraud or deception.

While Whitten argues that 76% of FleetCor's revenue came from fees and that all the fees were fraudulent, Whitten's complaint fails to plead particularized facts showing that Board members other than Clarke knew of the fraud or knew of FleetCor's allegedly deceptive marketing by its salespeople. And, as the district court noted, any inference of knowledge of the allegedly fraudulent scheme based on the percentage of revenue FleetCor received from fees does not extend to Outside Directors. While it

is reasonable to assume managers are privy to the daily operations of a company, the same is not true for Outside Directors. *Cf. Pfeiffer v. Toll*, 989 A.2d 683, 693 (Del. Ch. 2010) (affording such an inference of knowledge under very different circumstances and under Rule 12(b)(6) but expressly distinguishing cases under Rule 23.1), *abrogated on other grounds by Kahn v. Kolberg Kravis Roberts & Co.*, 23 A.3d 831 (Del. 2011).

Because Whitten failed to adequately plead Board knowledge of the allegedly fraudulent scheme, all three of his claims that purportedly show that a majority of the Board faced a substantial likelihood of liability fail. Nevertheless, we discuss the three claims below in more detail.

### B. *Whether the Board is liable for knowingly or recklessly allowing the alleged fraud to continue.*

Defendants argue that Whitten failed to preserve any claim that the Board knew and failed to act because he disavowed any *Caremark*[4] claim before the district court. Whitten responds that his claim is not a *Caremark* claim, which would allege an unconsidered failure of the Board, *Caremark*, 698 A.2d at 967, because he alleges conscious disregard. Whitten argues that this conscious disregard claim is along the lines of *In re Abbott* and *In re Pfizer*.[5] We

---

[4] *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).

[5] *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010).

need not decide whether Whitten waived this claim below because
he has failed to adequately plead liability on this claim.

   While Whitten argues that the district court erred by ignor-
ing his theory of liability that the Board knowingly and/or reck-
lessly allowed FleetCor to violate the law, this theory is not con-
nected to an underlying claim of liability in the complaint.   As
*Zuckerberg* makes clear, to determine demand excusal, we ask
"whether the director faces a substantial likelihood of liability on
any of the claims that would be the subject of the litigation de-
mand." 262 A.2d 1034, 1059.   In his complaint, Whitten brought
four counts against the Defendants: (1) breach of fiduciary duties
for disseminating false and misleading information to shareholders;
(2) breach of fiduciary duties for insider trading and misappropria-
tion of company information; (3) unjust enrichment; and (4) con-
tribution.   Whitten's theory that the Defendants allowed FleetCor
to violate the law, then, is not connected to the underlying claims
in his lawsuit and cannot establish demand excusal on his claims.
In other words, even if Whitten could show the Defendants know-
ingly or recklessly allowed FleetCor to violate the law, Whitten
could not show that the Defendants faced a "substantial likelihood
of liability on any of the claims" that he brought in his complaint.
*Id.*   Therefore, Whitten's argument that demand is excused be-
cause the Board faced liability for knowingly and/or recklessly al-
lowing FleetCor to violate the law fails.

### C. *Whether a majority of the Board faces liability for insider trading.*

Whitten argues that the Selling Defendants face a substantial likelihood of liability for their stock sales.  To succeed, Whitten must show that each of the Selling Defendants knew and traded on "material, non-public information" about FleetCor.  *Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003).  Because there were nine Directors when Whitten filed his complaint, to succeed, Whitten must show that five directors were interested (tainted) because they faced a substantial likelihood of liability.  Even assuming *arguendo* that Whitten might be able to show that Clarke and Macchia are interested based on approving misstatements (see discussion below), in order to show that a majority of the Board faced a substantial likelihood of liability, Whitten needs to show a likelihood of liability for each of the three other Selling Defendants who are on the Board—Hagerty, Johnson, and Farrelly.  Because Whitten cannot show that either Johnson or Farrelly face liability, Whitten failed to plead demand excusal on this basis.[6]

---

[6] By focusing on Johnson and Farrelly, we do not imply that Hagerty or Macchia face liability.  Whitten simply must show that a majority of the Board faces liability to establish demand excusal.  In other words, Whitten must show that there are five interested (tainted) Directors.  He succeeds with respect to Clarke.  We have assumed *arguendo* that he could also include Macchia.  Thus, to succeed, Whitten has to show that three more Directors faced a substantial likelihood of liability.  Thus, Whitten needs all three of the other Selling Directors—Hagerty, Johnson, and Farrelly.  If Whitten fails with

As discussed above, Whitten has failed to show that the Board had knowledge of the alleged fraudulent scheme and that dooms Whitten's insider trading claims. However, even assuming *arguendo* that Whitten successfully pleaded that the Board had knowledge that Chevron would be terminating its contract with FleetCor as early as the October 2016 Board meeting, neither Johnson nor Farrelly could face any substantial risk of liability based on their sales because their alleged insider sales occurred before October 2016.[7] Their sales also occurred well before the publication of the Capitol Forum and Citron reports.[8] Whitten's allegations fail to show Johnson and Farrelly face a substantial likelihood of liability based on Whitten's insider trading claims. Therefore, demand was not excused.

---

respect to even one of the three, his claim fails. We focus on Johnson and Farrelly only because Whitten's failure with respect to them is most obvious.

[7] Moreover, as noted above, Chevron's dissatisfaction with FleetCor suggested only dissatisfaction with contractually agreed-upon services and excessive fees—not fraud.

[8] It is not clear that any sales after the publication of those reports would be suspicious since those reports are *public* information.

### D. *Whether a majority of the Board faces liability for knowing or reckless misstatements.*

Whitten argues that the Board is liable for purported misstatements made in earnings calls and earnings guidance.[9]  This misstatement theory is without merit for two separate and independent reasons.  First, as discussed above, Whitten failed to plead particularized facts showing that a majority of the Board knew of the alleged fraudulent scheme.  Thus, a majority of the Board cannot be liable for any alleged knowing or reckless misstatements in earnings calls and earnings call guidance.

Second, Whitten must show that at least five members of the Board are liable for the alleged misstatements.  And Whitten failed to allege that any members of the Board besides Clarke and possibly Macchia even participated in any misstatements.  Even assuming that any misstatement in the earnings calls could be attributed to Macchia based on the limited role he played, Whitten cannot show that the rest of the Board is subject to a substantial likelihood of liability on the misstatement claims.  Thus, even if we

---

[9] Whitten does not appeal the district court's holding that board members' routine approval of FleetCor's 10-K filings is insufficient under Delaware law to sustain a misstatement claim.  Nor would an appeal on that issue likely prevail.  *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009) (concluding that allegations that directors reviewed routine disclosures was insufficient to conclude that they faced a substantial likelihood of liability).

assume (contrary to fact) that the Board had knowledge, Whitten's misstatement claim would fail to show demand excusal.

Whitten argues that the district court should have reasonably inferred participation by the rest of the Board based on two considerations: (1) an email from Macchia showing he had reviewed and revised an earnings call script and (2) FleetCor's corporate governance policy that provides that the Audit Committee should discuss earnings press releases with management. But neither of those warrant any such inference. Conduct by one Board member does not imply identical conduct by other Board members, especially where Whitten is required to plead particularized facts for why demand was excused and the Defendants are not similarly situated. *Cf. In re The Home Depot, Inc. S'holder Derivative Litig.*, 223 F. Supp. 3d 1317, 1325 (N.D. Ga. 2016) (concluding "group pleading may be enough" where "defendants are 'similarly situated'"). Macchia, as a member of the Audit Committee, has certain duties related to earnings calls. Specifically, FleetCor's governance requires the Audit Committee to "discuss with management earnings press releases . . . and any earnings guidance." But those discussions "may be done generally." Thus, no reasonable inference can be drawn from FleetCor's corporate governance documents or Macchia's actions that any other member of the Audit Committee—or the Board for that matter—played any role in specific purported misstatements in earnings calls. Whitten's argument that a majority of the Board faces a substantial likelihood of

liability for knowing or reckless misstatements, then, fails to excuse demand.

## V. CONCLUSION

For the foregoing reasons, Whitten failed to plead particularized facts showing demand was excused. Therefore, we affirm the district court's dismissal of Whitten's complaint under Rule 23.1.

**AFFIRMED.**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 27, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-14352-GG
Case Style:  Jerrell Whitten v. Ronald Clarke, et al
District Court Docket No:  1:17-cv-02585-LMM

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website. Enclosed
is a copy of the court's decision filed today in this appeal. Judgment has this day been entered
pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP
41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against appellant</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at
www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number
referenced in the signature block below. For all other questions, please call <u>Joseph Caruso, GG</u>
at <u>(404) 335-6177</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs